```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                       Civil Action No. 08-3524
```

**RECEIVED**

**DEC 1 2 2008**

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

In Regard to the Matter of:

Bayside State Prison            OPINION/REPORT
Litigation                         OF THE
                                SPECIAL MASTER
HAROLD FRAZIER

           -vs-

WILLIAM H. FAUVER, et al,

         Defendants.

* * * *

**TUESDAY, NOVEMBER 18, 2008**

* * * *

BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER

```
 1

 2

 3              Transcript of proceedings in the above

 4    matter taken by Theresa O. Mastroianni, Certified

 5    Court Reporter, license number 30X100085700, and

 6    Notary Public of the State of New Jersey at the

 7    United States District Court House, One Gerry Plaza,

 8    Camden, New Jersey, 08102, commencing at 1:12 PM.

 9

10

11

12

13

14

15

16

17            MASTROIANNI & FORMAROLI, INC.

18        Certified Court Reporting & Videoconferencing

19                251 South White Horse Pike

20                Audubon, New Jersey 08106

21                     856-546-1100

22

23

24

25
```

```
 1
 2     A P P E A R A N C E S:
 3
 4
 5           ROSELLI & GRIEGEL, PC
             BY:  JAMES LAZZARO ESQUIRE
 6           1337 STATE HIGHWAY 33
             HAMILTON SQUARE, NEW JERSEY  08690
 7           609-586-2257
             ATTORNEYS FOR THE DEFENDANTS
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          JUDGE BISSELL:  I am now reopening the
2    record for the delivery of an oral decision in the
3    matter of Harold Frazier, F-R-A-Z-I-E-R, docket
4    number 08-3524.  This opinion/report is being issued
5    pursuant to the directives of the Order of Reference
6    to a Special Master and the Special Master's
7    Agreement and the guiding principles of law which
8    underlie this decision to be applied to the facts
9    upon which it is based as set forth in the jury
10   instructions in the Walker and Mejias jury charges to
11   the extent applicable to the allegations of Mr.
12   Frazier.
13             As finalized after review under Local
14   Civil Rule 52.1, this transcript will constitute the
15   written report required under paragraph seven of the
16   Order of Reference to a Special Master.
17             Once again, there is a fairly
18   significant amount of testimony and exhibits in this
19   matter, but I'm not going to recite them in any great
20   length in the course of making my findings of fact.
21             I find that on August 6th, 1997, the
22   prison was, indeed, still in lockdown status and the
23   current plaintiff, Mr. Frazier, was housed in number
24   three barracks on the Farm.  On this occasion a
25   number of corrections officers assigned to Bayside

1   and not SOG officers were performing roving patrol
2   duties at the Farm and, by coincidence, the four of
3   them operating in two teams of two men apiece were at
4   the Number Three Barracks early in the morning when a
5   signal went off to signal a moment of of silence in
6   memory of Officer Baker.  This would appear to be
7   approximately the one week anniversary of his death
8   and hence there is some inherent sense in that.
9               These officers, by the way, were
10  Officers Worlock, Thornton, Zeller and Nessen as
11  reflected in the record, some of whom testified here.
12              We have to take a little bit of a look
13  at who Mr. Frazier is at this point.  He was in his
14  unit on the barracks.  He fancied himself somewhat of
15  a poet and, indeed, a protest poet, if you will, with
16  regard to both his lot and apparently the prison
17  situation at Bayside as a whole.  And we know this
18  among other things because in the course of his
19  testimony he talked about a large supply of his
20  poetry having been taken from him.  As characterized,
21  including by Mr. Frazier himself, that poetry could
22  well have been construed as being likely to disrupt
23  the situation in Bayside Prison, but that's not the
24  real gravamen of the events that underlie his claim
25  here.

1           In the course of the moment of silence,
2  a commotion was heard to come from his cell.  The
3  officers who were there, whose names I've already
4  mentioned, responded and observed him yelling out of
5  an interior window at his area.  And I'm using the
6  word cell here generically.  It may be that in the
7  barracks we didn't have conventional cells.  He's
8  yelling out the phrase "we're going to kill another
9  cop."  This may have been a reflection of Mr.
10 Frazier's sentiments or it may have been a yelling
11 out of some segment of of his poetry either in the
12 course of composition or perhaps previously composed.
13 But either way, it certainly demonstrated a level of
14 disrespect and a level of inclination to disrupt the
15 situation in Number Three Barracks on the Farm which
16 merited response from the officers in question.
17           They did respond and their reports are
18 several in number and essentially consistent.  Not
19 necessarily elevating its importance over others, but
20 in D-439, a preliminary incident report from Sergeant
21 Hunt to Chief Patterson, there is a description of
22 the events that took place.  Sergeant Hunt, by the
23 way, is reporting in this case events that were
24 reported to him by the officers on the scene.
25 "During the moment of silence for Senior Corrections

1   Officer Baker at 8:05 AM Inmate Frazier yelled, 'we
2   will kill another cop.'  Inmate Frazier was
3   positively identified as the offender by Officers
4   Nessen, Thornton, Zeller and Worlock.  The officers
5   entered the inmate's room and told Frazier to lie on
6   his bed.  He refused to comply with orders to lie on
7   his bed.  Frazier resisted being restrained.  Once
8   restrained, continued to resist.  While being
9   escorted to the center Inmate Frazier continued to
10  fail to comply with verbal orders and continued to
11  physically resist.  On arrival at the Administration
12  Building, SOG was notified and arrived on the Farm
13  unit."  He was then transferred and further paperwork
14  was generated.  We know from the evidence that SOG
15  arrived at the unit and then transferred him to a
16  detention facility after the corrections officer had
17  taken him to the center area on the Farm.
18              Officer Zeller described the
19  extraction.  His job was to wrap up both legs of the
20  individual and Officers Nessen and Thornton each took
21  an arm as they transported him through this
22  resistance.  Officer Zeller also describes in an
23  interoffice memorandum, also a part of D-439, I
24  believe, about the nature of Mr. Frazier's resistance
25  and the need to cuff him, his refusal to follow

1    orders and shouting of obscenities and so forth.
2    Even his transport to the center was marked with a
3    level of resistance although not perhaps as extreme
4    as it was in the cell.
5            Upon his arrival at the center, he
6    continued to disobey orders.  He was asked to kneel
7    in the corner to await the SOG officers, he refused
8    to do so and at that point he was pushed to the floor
9    and required to lie there until they arrived.
10           This segment of his journey, if that's
11   the way to put it, on August 6th was filmed at the
12   center and it would appear by Internal Affairs
13   Officers, although that's not a hundred percent sure.
14   And, of course, not surprisingly because Mr. Frazier
15   is a very savvy person, he was completely compliant
16   while on camera.  To me, that does not in the least
17   detract from the nature of his behavior that preceded
18   it.
19           Mr. Frazier has come forth both in this
20   court and in other correspondence closer in time to
21   August 6, 1997 with a plethora of charges with regard
22   to beatings that he received, supposedly being
23   knocked unconscious, other transgressions against
24   both his person and his property that go on and on.
25   But as I've said, we have to remember, this is a very

1   savvy individual who knows the system.  He is also a
2   very combative and angry individual who, as I
3   mentioned before, fancied himself somewhat of an
4   angry or disputing poet.
5              His yelling out on the occasion in
6   question is credible and consistent with that
7   mentality and having been further angered by the
8   extraction and by the subsequent administrative
9   prosecution against him for these inciteful and
10  dangerous remarks, he chose to strike out at the
11  administration, at the officers involved, not only
12  with allegations regarding this incident, but others.
13             However, I find that the alleged
14  actions of which he complains, and they permeate the
15  transcripts and the documents here, just didn't
16  happen.  They are a fabrication of this man generated
17  by his anger, one might even call it rage, over the
18  suppression of this protesting poet under the
19  circumstances mentioned; but under circumstances
20  which I find are entirely reasonable as far as the
21  action taken by the administration, and were
22  unaccompanied by any excessive force.
23             Finally, although not every item of
24  evidence has been discussed in this opinion/report,
25  all evidence presented to the Special Master was

1   reviewed and considered.  For the reasons set forth
2   above I recommend in this report that the district
3   court enter an order and judgment of no cause for
4   action with regard to Harold Frazier.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1         C E R T I F I C A T E

2

3         I, Theresa O. Mastroianni, a Notary Public and

4    Certified Shorthand Reporter of the State of New

5    Jersey, do hereby certify that the foregoing is a

6    true and accurate transcript of the testimony as

7    taken stenographically by and before me at the time,

8    place, and on the date hereinbefore set forth.

9         I DO FURTHER CERTIFY that I am neither a

10   relative nor employee nor attorney nor counsel of any

11   of the parties to this action, and that I am neither

12   a relative nor employee of such attorney or counsel,

13   and that I am not financially interested in the

14   action.

15

16

17

18

19   _____
     Theresa O. Mastroianni, C.S.R.
20   Notary Public, State of New Jersey
     My Commission Expires May 5, 2010
21   Certificate No. XI0857
     Date: November 18, 2008
22

23

24

25